612 S.E.2d 462

**Christine McCUNE, Appellant,**

**v.**

**MYRTLE BEACH INDOOR SHOOTING RANGE, INC., a/k/a Myrtle Beach Shooting Range, Inc. and Brass Eagle, Inc., Defendants,**

**of whom Myrtle Beach Indoor Shooting Range, Inc., a/k/a Myrtle Beach Shooting Range, Inc. is, Respondent.**

No. 3974.

Court of Appeals of South Carolina.

Heard March 8, 2005.

Decided April 11, 2005.

244

Jill Wright Fennel, of Myrtle Beach, for Appellant.

John H. Tiller and Elizabeth Applegate Dieck, both of Charleston, for Respondent.

BEATTY, J.:

Christine McCune brought an action for negligence and strict liability against the Myrtle Beach Indoor Shooting Range (the Range) for injuries sustained while she was participating in a paintball game.[1] McCune appeals from the trial court's grant of summary judgment to the Range. We affirm.

## FACTS

The Range offers paintball games and allows participants to rent protective equipment, including face masks, provided by the Range. McCune participated in a paintball match with her husband and friends. She utilized a mask provided by the Range. Prior to being allowed to participate, McCune signed a general waiver. The waiver released the Range from liability from all known or unknown dangers for any reason with the exception of gross negligence on the part of the Range.

During her play, the mask was loose and ill fitting. She attempted to have the mask tightened or replaced on several occasions and an employee of the Range attempted to properly fit the mask for McCune. While playing in a match, McCune caught the mask on the branch of a tree. The tree was obscured from her field of vision by the top of the mask. The mask was raised off her face because it was loose, and provided no protection against an incoming paintball pellet. The pellet struck McCune in the eye, rendering her legally blind in the eye.

McCune brought suit, alleging causes of action for negligence and strict liability based on the failure of the mask to properly be fitted and protect her during play. The Range filed an answer asserting the waiver released them from all liability as a result of the paintball striking McCune. Addi-

---

1. Brass Eagle, Inc., was also named in the action as the manufacturer of the mask McCune alleged was defective or in poor operating condition. McCune and Brass Eagle settled the suit and Brass Eagle is not a party to this appeal.

tionally, it asserted McCune's comparative negligence barred recovery.

Subsequently, the Range filed a motion for summary judgment, again alleging the waiver and McCune's comparative negligence barred recovery. The court granted the Range's motion, finding the waiver was sufficient to show McCune expressly assumed the risks associated with playing paintball. Additionally, the court found her overwhelming comparative fault barred recovery. The trial court subsequently denied McCune's motion for reconsideration. This appeal followed.

## STANDARD OF REVIEW

In reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court: summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Cunningham ex rel. Grice v. Helping Hands, Inc.*, 352 S.C. 485, 491, 575 S.E.2d 549, 552 (2003) ("Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998). "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below." *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

## DISCUSSION

McCune maintains the trial court erred in granting summary judgment to the Range on the basis of the exculpatory language in the release of liability signed by McCune. McCune asserts she did not anticipate the harm that was inflicted or the manner in which it occurred. Additionally, she

contends the failure of the equipment was unexpected and she could not have voluntarily assumed such a risk. We disagree.

■■ As an initial matter, we must determine whether this is a case involving express assumption or implied assumption of the risk. Express assumption of the risk sounds in contract and occurs when the parties agree beforehand, "either in writing or orally, that the plaintiff will relieve the defendant of his or her legal duty toward the plaintiff." *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime,* 333 S.C. 71, 79–80, 508 S.E.2d 565, 569–70 (1998).

■■■ "Express assumption of risk is contrasted with implied assumption of risk which arises when the plaintiff implicitly, rather than expressly, assumes known risks. As noted above, implied assumption of risk is characterized as either primary or secondary." *Id.* at 80–81, 508 S.E.2d at 570. "[P]rimary implied assumption of risk is but another way of stating the conclusion that a plaintiff has failed to establish a prima facie case [of negligence] by failing to establish that a duty exists." *Id.* at 81, 508 S.E.2d at 570 (quoting *Perez v. McConkey,* 872 S.W.2d 897, 902 (Tenn.1994)). "Secondary implied assumption of risk, on the other hand, arises when the plaintiff knowingly encounters a risk created by the defendant's negligence." *Id.* at 82, 508 S.E.2d 565, 508 S.E.2d at 571.

In the instant case, we are confronted with a defense based upon McCune's express assumption of the risk. She signed a release from liability prior to participating in the paintball match. As acknowledged by *Davenport,* the courts of South Carolina have analyzed express assumption of the risk cases in terms of exculpatory contracts. *Id.* at 80, 508 S.E.2d at 570.

■■ Exculpatory contracts, such as the one in this case, have previously been upheld by the courts of this state. *See Huckaby v. Confederate Motor Speedway, Inc.,* 276 S.C. 629, 630, 281 S.E.2d 223, 224 (1981) (finding plaintiff's action against speedway for injuries sustained during a race was barred by "waiver and release" voluntarily signed by plaintiff prior to entering the race track); *Pride v. Southern Bell Tel. & Tel. Co.,* 244 S.C. 615, 619–22, 138 S.E.2d 155, 157–58 (1964) (holding it was not violative of public policy for telephone company to legally limit its liability by contract for negligence

in the publication of a paid advertisement in the yellow pages of its telephone directory). "However, notwithstanding the general acceptance of exculpatory contracts, '[s]ince such provisions tend to induce a want of care, they are not favored by the law and will be strictly construed against the party relying thereon.'" *Fisher v. Stevens,* 355 S.C. 290, 295, 584 S.E.2d 149, 152 (Ct.App.2003) (quoting *Pride,* 244 S.C. at 619, 138 S.E.2d at 157). This court has explained:

> Common sense and good faith are the leading touchstones of the construction of a contract and contracts are to be so construed as to avoid an absurd result. Where one construction would make a contract unusual or extraordinary and another, equally consistent, would make the contract reasonable, fair and just, the latter construction will prevail.

*Georgetown Mfg. & Warehouse Co. v. South Carolina Dep't of Agric.,* 301 S.C. 514, 518, 392 S.E.2d 801, 804 (Ct.App.1990) (citing *C.A.N. Enters., Inc. v. South Carolina Health & Human Servs. Fin. Comm'n,* 296 S.C. 373, 373 S.E.2d 584 (1988)).

Contracts that seek to exculpate a party from liability for the party's own negligence are not favored by the law. *Pride,* 244 S.C. at 619, 138 S.E.2d at 157. An exculpatory clause, our supreme court has held, is to be strictly construed against the party relying thereon. *Id.* An exculpatory clause will never be construed to exempt a party from liability for his own negligence " 'in the absence of explicit language clearly indicating that such was the intent of the parties.'" *South Carolina Elec. & Gas Co. v. Combustion Eng'g, Inc.,* 283 S.C. 182, 191, 322 S.E.2d 453, 458 (Ct.App.1984) (quoting *Hill v. Carolina Freight Carriers Corp.,* 235 N.C. 705, 71 S.E.2d 133, 137 (1952)).

The release in the instant case explicitly and unambiguously limited the Range's liability. Specifically, McCune signed the release, thereby acknowledging the following pertinent clauses:

> 1. The risk of injury from the activity and weaponry involved in paintball is significant, including the potential for permanent disability and death, and while particular protective equipment and personal discipline will minimize this risk, the risk of serious injury does exist;
>
> 2. I KNOWINGLY AND FREELY ASSUME ALL SUCH RISKS, both known and unknown, EVEN IF ARIS-

ING FROM THE NEGLIGENCE of those persons released from liability below, and assume full responsibility for my participation; and,

. . .

4. I, for myself and on behalf of my heirs . . . HEREBY RELEASE AND HOLD HARMLESS THE AMERICAN PAINTBALL LEAGUE (APL), THE APL CERTIFIED MEMBER FIELD, the owners and lessors of premises used to conduct the paintball activities, their officers, officials, agents, and/or employees ("Releasees"), WITH RESPECT TO ANY AND ALL INJURY, DISABILITY, DEATH, or loss or damage to person or property, WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE, except that which is the result of gross negligence and/or wanton misconduct.

. . .

I HAVE READ THIS RELEASE OF LIABILITY AND ASSUMPTION OF RISK AGREEMENT, FULLY UNDERSTANDING ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND SIGN IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT.

The agreement is then signed by McCune and dated the date of the incident.

■■■ The above agreement is sufficient to limit the liability of the Range to McCune. The agreement was voluntarily signed and specifically stated: (1) she assumed the risks, whether known or unknown; and (2) she released the Range from liability, even from injuries sustained because of the Range's own negligence. It is clear McCune voluntarily entered into the release in exchange for being allowed to participate in the paintball match.

Additionally, she expressly assumed the risk for all known and unknown risks while participating and cannot now complain because she did not fully appreciate the exact risk she faced. *"Except where he expressly so agrees,* a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character." *Restatement (Second) of Torts* 496D (1965) (emphasis added).

We find the release entered into by the parties does not contravene public policy. In *Huckaby,* the plaintiff signed a waiver similar to the one above, which was required before he could participate in a sanctioned automobile race. He maintained his injuries were caused by the speedway's faulty installation and maintenance of a guardrail. *Huckaby,* 276 S.C. at 630, 281 S.E.2d at 223. As was found in *Huckaby,* participation in a paintball match is voluntary. " 'If these agreements, voluntarily entered into, were not upheld, the effect would be to increase the liability of those organizing or sponsoring such events to such an extent that no one would be willing to undertake to sponsor a sporting event. Clearly, this would not be in the public interest.' " *Huckaby,* 276 S.C. at 631, 281 S.E.2d at 224 (quoting *Gore v. Tri–County Raceway, Inc.,* 407 F.Supp. 489, 492 (M.D.Ala.1974)).

Furthermore, we find the instant case to be distinguishable from this court's decision in *Fisher v. Stevens,* 355 S.C. 290, 584 S.E.2d 149 (Ct.App.2003). In *Fisher,* the plaintiff worked on a wrecker crew at the Speedway of South Carolina. In order to work at the Speedway, Fisher was required to sign a release and waiver of liability. During a race, the wrecker on which Fisher was working responded to a crash. While the wrecker was moving towards one of the vehicles, Fisher, who was riding on the back of the wrecker, fell off and suffered severe head injuries. Through a guardian, Fisher brought suit alleging negligence, gross negligence, and recklessness against the driver and the owner of the wrecker as well as the Speedway. The defendants raised the Release as an affirmative defense. All parties filed cross-motions for summary judgment, alleging the Release acted as a complete bar to Fisher's claims. The circuit court judge granted partial summary judgment to Fisher against the driver and the owner of the wrecker on the ground the Release, as a matter of law, did not bar Fisher's claims. Additionally, the court denied summary judgment to the Speedway. The court found an issue of material fact existed as to whether Fisher was an employee of the Speedway.

On appeal, the driver and the owner of the wrecker argued the circuit court erred in finding the Release was inapplicable to them. Specifically, they contended they were released from liability given the Release encompassed "VEHICLE OWNERS, DRIVERS, [and] ... ANY PERSONS IN ANY RE-

STRICTED AREA." *Id.* at 294, 584 S.E.2d at 151–52. In analyzing this issue, we found the Release, an exculpatory contract, was ambiguous because the terms, "driver" and "vehicle owner" were "terms of art [which were] not used to identify *any* owner or driver of *any* vehicle." *Id.* at 295, 584 S.E.2d at 152. Additionally, we agreed with the circuit court that the phrase "ANY PERSONS IN ANY RESTRICTED AREA" did not relieve the driver and the owner of the wrecker of liability on the ground it was overly broad and, thus, in contravention of public policy. Because the contract "did not clearly inform Fisher he would be waiving all claims due to the [driver's and vehicle owner's negligence]," we held the driver and the vehicle owner could not be released from liability "based on the broad 'catch-all' phrase." *Id.* at 298, 584 S.E.2d at 153.

In contrast, the release in the case at bar is neither ambiguous nor overbroad. In fact, McCune in her deposition characterized the release as a "standard waiver." Although our research reveals no South Carolina case that deals specifically with a release for paintball, other jurisdictions have found similarly worded releases to be unambiguous. *See Taylor v. Hesser,* 991 P.2d 35, 38 (Okla.Civ.App.1998) (affirming grant of summary judgment to operators of paintball facility and shooter where plaintiff, who was injured during the paintball game, signed a release prior to participating); *Kaltenbach v. Splatball, Inc.,* No. C7–99–235, 1999 WL 690191, at *2 (Minn.Ct. App.1999) (finding paintball participant was precluded from recovering against owner of a paintball facility for injuries where participant signed a release of owner's liability).

We would also note that unlike the release in *Fisher,* the release signed by McCune did not preclude recovery for a cause of action involving gross negligence.[2] Thus, this opinion should not be construed as creating an indefensible position for all injuries sustained during inherently dangerous recreational activities. *Cf. Adams v. Roark,* 686 S.W.2d 73, 75–76 (Tenn.1985) (recognizing, in an action to recover for injuries sustained by a motorcyclist at a drag way, that an agreement to contract against liability for gross negligence is unenforcea-

---

2. Neither in her brief nor at oral argument did McCune assert that the Range's actions constituted gross negligence. Instead, she acknowledged at oral argument that the Range operated with at least slight care

ble); *Murphy v. N. Am. River Runners, Inc.*, 186 W.Va. 310, 412 S.E.2d 504, 510 (1991) (stating, in an action to recover for injuries sustained during a whitewater rafting accident, "a general clause in a pre-injury exculpatory agreement or anticipatory release purporting to exempt a defendant from all liability for any future loss or damage will not be construed to include the loss or damage resulting from the defendant's intentional or reckless misconduct or gross negligence, unless the circumstances clearly indicate that such was the plaintiff's intention").

Accordingly, we hold the trial court properly determined the release signed by McCune was sufficient to release the Range from all liability in this incident. Therefore, the decision of the trial court is

**AFFIRMED.**[3]

ANDERSON and SHORT, JJ., concur.

---

by attempting to properly adjust the mask to McCune. *See Clyburn v. Sumter County Sch. Dist. No. 17*, 317 S.C. 50, 53, 451 S.E.2d 885, 887 (1994)("Gross negligence is the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do."); *Faile v. South Carolina Dep't of Juvenile Justice*, 350 S.C. 315, 331–32, 566 S.E.2d 536, 544 (2002) (stating gross negligence "is the failure to exercise even the slightest care").

3. As we have affirmed the court's decision based upon its analysis of the exculpatory contract, we need not determine whether McCune's claim would also be barred because her negligence was greater than that of the Range.