# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Noel Owens, Appellant,

v.

Mountain Air Heating & Cooling, South Market Real Estate, Demetra Caldera, and Ronald E. Gilmer, Defendants,

Of which South Market Real Estate and Demetra Caldera are the Respondents.

Appellate Case No. 2020-000054

---

Appeal From Richland County
Thomas A. Russo, Circuit Court Judge

---

Opinion No. 6017
Heard March 6, 2023 – Filed August 23, 2023

---

## AFFIRMED

---

Andrew Sims Radeker, of Harrison, Radeker & Smith, P.A., of Columbia, for Appellant.

Margaret A. Collins and Elizabeth Dyanne Moore, both of Palmetto State Law Group, LLC, of Columbia, for Respondent South Market Real Estate.

Kelley Reed Leddy, of Salley Law Firm, P.A., of Lexington, and William R. Padget, of HHP Law Group, LLC, of Columbia, both for Respondent Demetra Caldera.

**LOCKEMY, A.J.:**  Noel Owens appeals the circuit court's ordering granting summary judgment to Demetra Caldera and South Market Real Estate (South Market) (collectively, Respondents).  On appeal, Owens argues the grant of summary judgment was improper because (1) the release signed on April 3, 2015, could not have released a claim that did not arise until April 13, 2015; (2) her claim is beyond the scope of the release; (3) the record contained evidence from which a factfinder could reasonably conclude Caldera was an agent of South Market; and (4) regardless of the outcome of this appeal, she is entitled to a jury trial on the liability issues.  We affirm.

## FACTS/PROCEDURAL HISTORY

Owens engaged Caldera, a real estate agent, to purchase a home from Ronald E. Gilmer.  On April 3, 2015, Owens and Caldera signed a single-page form on the respective lines for "Seller or Buyer" and "Licensee."  The top of the form contains a "South Market Realty" letterhead; the form provides provisions regarding a due diligence period, disclaimer, and a release of liability and indemnification (the Release & Indemnification).  The entirety of the Release & Indemnification provision states:

> The buyer hereby releases, indemnifies[,] and holds harmless South Market Real Estate and its licensees from and of any and all actions, claims, or demands regarding: (1) the recommendation of and selection of inspectors, contractors, and service providers (including but not limited to mortgage lenders and closing attorneys); (2) the acts, claims, performance, and omissions of selected inspectors, contractors, and service providers (including but not limited to mortgage lenders and closing attorneys); [and] (3) the verification of property information.

Caldera alleges she provided a list of suggested inspectors to Owens; the list includes Mountain Air Heating and Cooling (Mountain Air).  Mountain Air provided an invoice and HVAC inspection letter, both dated April 13, 2015.  The invoice states the Mountain Air HVAC technician "performed a single system HVAC inspection [and f]ound everything is working well at this time."  The HVAC inspection letter identifies Caldera in the space provided for "Realtor/Requested by" and identifies various components of the HVAC system as

"Good."  Additionally, on April 13, 2015, Caldera emailed Owens "[t]he heating and air looks good[.  T]he inspector said it is well taken care of" and included attachments of inspection documents.  Owens claims that after closing on the home, she discovered issues with the HVAC system that Mountain Air's inspection did not reveal and asserts a June 2015 inspection showed problems with the HVAC system.

After the subsequent inspection, email exchanges took place between Owens and Tonya Graves, the broker in charge and owner of South Market.  Graves emailed Owens and suggested she contact Mountain Air to report the issues the additional inspections revealed; Graves also stated she spoke with Caldera regarding Owens's home purchase and she determined "that [Caldera] did everything by the book and went above and beyond after the closing to try and help with this issue."  In the email, Owens stated her dissatisfaction with Caldera for selecting Mountain Air to complete the initial inspection and stated her dissatisfaction and referenced Caldera's April 13th email to Owens.

Owens filed a complaint against Mountain Air, Gilmer, and Respondents.  As to Mountain Air and Respondents, she asserted claims pursuant to the South Carolina Unfair Trade Practices Act.[1]  Owens also asserted claims of negligence, fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, and breach of contract accompanied by a fraudulent act against Respondents.  Owens alleged (1) Caldera was an employee, agent, and servant of South Market and South Market had the right to control Caldera; (2) Caldera engaged Mountain Air to complete the initial inspection; (3) Caldera represented to her the HVAC system "looked good and that it was well taken care of," although inspections revealed problems; (4) Owens relied on Caldera's representations prior to purchasing the home; (5) Caldera should have known about the HVAC problems; and (6) Caldera knew she was relying on Caldera to adequately represent the condition of the home and Caldera breached her duties by not doing so.  Subsequently, Respondents filed their separate answers.  In addition to the defenses raised, Caldera sought indemnification from Owens, pursuant to the Release & Indemnification provision, for any amounts she was found to be liable to Owens and attorney's fees and raised a breach of contract counterclaim.  Similarly, South Market also sought indemnification.

Graves filed an affidavit stating that at all relevant times, Caldera was an independent contractor and not an employee of South Market and it provided

---

[1] S.C. Code Ann. §§ 39-5-10 to -560 (2023).

Caldera with a 1099 form to show compensation. Graves stated South Market "had very little to do with the marketing, sale, and closing" of the property. She noted Caldera provided Owens a disclaimer and release of liability and Owens knew Respondents made no "representations as to the condition of the property or work-product of inspectors." Finally, Graves stated Caldera forwarded all inspection materials to Owens.

Caldera and South Market filed separate motions and memoranda for summary judgement. Caldera argued the Release & Indemnification provision barred Owens from any recovery and reiterated her breach of contract counterclaim and indemnification claim. Caldera's attorney also provided an affidavit regarding attorney's fees and stated Caldera had incurred $1,982.48 of cost to defend this action. South Market argued (1) Caldera was an independent contractor and it was not liable for her alleged actions or omissions; (2) the Release & Indemnification provision barred Owens from any recovery; and (3) it was entitled to indemnification.

In response to Respondents' motions for summary judgment, Owens asserted summary judgment would be improper because (1) the Release & Indemnification provision did not cover her prospective claim; (2) there was a factual issue of agency regarding the relationship between Caldera and South Market; and (3) indemnification was improper because Caldera and South Market were at fault.

Owens submitted an affidavit, in which she stated she initially spoke to Caldera at South Market's office to inquire about purchasing a home and during that initial call, Caldera transferred her call to another South Market employee. She stated that at all relevant times, she believed Caldera was an agent of South Market. Owens averred Caldera chose Mountain Air to complete the HVAC inspection and reiterated Caldera's email to her stating "[t]he heating and air looks good." She stated further inspections revealed problems not found by Mountain Air and replacing the HVAC system and ducts costs her $8,400.

At the hearing on Respondents' motions for summary judgment, Caldera asserted (1) her April 13th email to Owens communicated the results of the HVAC inspection and did not represent her affirmative statement on the condition; (2) the Release & Indemnification provision barred Owens's claim; (3) the Release & Indemnification provision contemplated releasing Respondents from a prospective action given the inspection had yet to take place; and (4) the Release & Indemnification provision required Owens to indemnify Caldera. Caldera further averred even if the HVAC inspection was conducted negligently, Mountain Air was responsible for such negligence, not Respondents. South Market argued (1)

Owens chose Mountain Air; (2) the release was valid even though it was prospective; (3) Caldera did not affirmatively state the condition of the HVAC system but only relayed the inspection results; (4) the Release & Indemnification provision required Owens to indemnify Respondents; and (5) Caldera was not an agent of South Market.

Owens contended (1) Caldera chose Mountain Air to conduct the inspection; (2) the disclaimer did not release her prospective claim; (3) Caldera affirmatively represented the condition of the HVAC system and her representation was false; and (4) she would not be liable to Respondents for indemnification because her claim stemmed from their negligence. She asserted there were factual issues as to whether Caldera's email was an affirmative representation on her part and whether Caldera was an agent of South Market; she argued she presented a scintilla of evidence to overcome summary judgment.

The circuit court granted Respondents' motions for summary judgment. It found Caldera was a licensee of South Market and barred Owens's claim against Respondents. It also found the Release & Indemnification provision applied to the scope of Owens's claim. The circuit court determined pursuant to the Release & Indemnification provision, Caldera and South Market "did not provide any warranty as to the reliability or accuracy of any inspector" and Owens agreed to hold Caldera and South Market harmless "for any actions or omissions by any inspectors, contractors, and service providers." The circuit court ordered Owens to indemnify Respondents for the costs of defending the action. It stated if the parties disputed the amount of indemnification, the court would hold a damages hearing. Owens filed a motion to reconsider, which the circuit court denied. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in granting summary judgment because the court concluded Owens released a claim that had not yet come into being at the time the parties signed the release document?

2. Did the circuit court err in granting summary judgment on the basis that the Owens's claim was not beyond the scope of the release language at issue?

3. Did the circuit court err in finding that summary judgment was proper on the question of whether Caldera was an agent of South Market?

4. Did the circuit court err in finding that Owens was not entitled to a jury trial on the remainder of the Respondents' claims?

**STANDARD OF REVIEW**

"In reviewing a grant of summary judgment, our appellate court applies the same standard as the trial court under Rule 56(c), SCRCP." *Woodson v. DLI Props., LLC*, 406 S.C. 517, 528, 753 S.E.2d 428, 434 (2014). A trial court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "A grant of summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Town of Summerville v. City of North Charleston*, 378 S.C. 107, 109-10, 662 S.E.2d 40, 41 (2008). "In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *Brockbank v. Best Cap. Corp.*, 341 S.C. 372, 378-79, 534 S.E.2d 688, 692 (2000).

"Under Rule 56(c), the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact." *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). "Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings." *Regions Bank v. Schmauch*, 354 S.C. 648, 660, 582 S.E.2d 432, 438 (Ct. App. 2003). "[T]he nonmoving party must come forward with specific facts showing there is a genuine issue for trial." *Id.*

**LAW/ANALYSIS**

  **I.    Prospective Claim**

Owens argues the circuit court erred in granting summary judgment because the release signed on April 3, 2015, could not have released a claim that did not arise until April 13, 2015, when Caldera emailed her. She argues that pursuant to *Gardner v. City of Columbia Police Department*,[2] a general release "ordinarily covers all claims and demands due *at the time of its execution*, and within contemplation of the parties." We disagree.

Our appellate courts have "generally upheld limitations of liability and exculpatory

---

[2] 216 S.C. 219, 223, 57 S.E.2d 308, 310 (1950).

clauses, finding they are commercially reasonable." *Maybank v. BB&T Corp.*, 416 S.C. 541, 573, 787 S.E.2d 498, 515 (2016). However, "the law disfavors such provisions, and courts must strictly construe the language of the provision against the drafter." *Id.* at 574, 787 S.E.2d at 515. "Nevertheless, a court's ultimate duty is confined to interpreting the contractual provisions agreed to by the parties—regardless of their wisdom or folly, apparent unreasonableness, or any failure of the parties to guard their interests carefully." *Id.*; *see also Huckaby v. Confederate Motor Speedway, Inc.*, 276 S.C. 629, 630, 281 S.E.2d 223, 224 (1981) ("Although exculpatory contracts are not favored by the courts, as they usually tend to induce a want of care, we have upheld them in some instances recognizing people should be free to contract as they choose.").

In *Huckaby*, the appellant signed a release of liability waiver before racing at the respondent's track. 276 S.C. at 630, 281 S.E.2d at 223. Later that evening, the appellant was injured participating in a race and brought a claim alleging the respondent's negligence caused his injuries. *Id.* The trial court granted the respondent's motion for summary judgment and held "the release operates as a complete bar to [the appellant's] action." *Id.* at 630, 281 S.E.2d at 223-24. Our supreme court affirmed the grant of summary judgment and determined the "appellant voluntarily entered into the waiver and release agreement with [the] respondent and his cause of action is barred." *Id.* at 631, 281 S.E.2d at 224.

In *McCune v. Myrtle Beach Indoor Shooting Range, Inc.*, the appellant brought suit against the respondent, a shooting range that offered paintball games. 364 S.C. 242, 245, 612 S.E.2d 462, 463 (Ct. App. 2005). Prior to participating, the appellant signed a waiver releasing the range from any liability for injuries she may have sustained. *Id.* at 248-49, 612 S.E.2d at 465-66. The appellant suffered an injury during a paintball game and maintained causes of action for negligence and strict liability against the paintball range. *Id.* at 245, 612 S.E.2d at 463. The circuit court granted the respondent's motion for summary judgment. *Id.* at 246, 612 S.E.2d at 464. Our supreme court affirmed, holding the release agreement was "sufficient to limit the liability of the [respondent]." *Id.* at 249, 612 S.E.2d at 465.

We hold the circuit court did not err in determining the Release and Indemnification provision released Respondents from the liability of Owens's claim. *See Town of Summerville*, 378 S.C. at 109-10, 662 S.E.2d at 41 ("A grant of summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). The release explicitly provides that Owens "releases, indemnifies[,] and holds harmless South Market Real Estate and its licensees from and of any and all actions, claims, or demands regarding" the selection of home inspectors or home inspectors acts and

omissions. The facts here are akin to *Huckaby* and *McCune*, in which this court and our supreme court determined exculpatory clauses barred respective appellants' prospective claims. By applying basic contract principles and the general rule upholding limitations of liability and exculpatory clauses, the release unambiguously released Respondents from Owens's claim. *See Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct. App. 2007) ("A release is a contract and contract principles of law should be used to determine what the parties intended."); *Maybank*, 416 S.C. at 573, 787 S.E.2d at 515 ("When a contract is entered into freely and voluntarily, contractual limitations are normally enforced."); *id.* at 574, 787 S.E.2d at 515 ("[A] court's ultimate duty is confined to interpreting the contractual provisions agreed to by the parties— regardless of their wisdom or folly, apparent unreasonableness, or any failure of the parties to guard their interests carefully.").

Owens argues that pursuant to *Gardner*, a release cannot be prospective. 216 S.C. 219, 57 S.E.2d 308. We disagree. In *Gardner*, the general release at issue, and agreed to by the injured plaintiff and a third-party construction company after an accident had occurred and in contemplation of compensation, stated the injured plaintiff agreed "to release [the third-party construction company] *of any trouble whatsoever*." *Id.* at 223, 57 S.E.2d at 309 (emphasis added). The *Gardner* court found: "[A] general release, such as the one now before us, not restricted by its terms to particular claims or demands, ordinarily covers all claims and demands due at the time of its execution, and within the contemplation of the parties." *Id.* at 223, 57 S.E.2d at 310. Unlike in *Gardner*, the Release and Indemnification provision here is not a "general release," but relates to "particular claims and demand" regarding acts yet to be performed, the recommendation and acts or omissions of inspectors, and therefore, applies to prospective claims. We conclude summary judgment was proper because the Release and Indemnification provision barred Owens's claim. Accordingly, we affirm as to this issue.

## II. Scope of the Release and Indemnification Provision

Owens argues the circuit court erred in granting summary judgment because her claim was beyond the scope of the Release and Indemnification provision. She contends Caldera's April 13th email constituted, on Caldera's part, an affirmative representation of the HVAC system's condition and the Release and Indemnification provision does not cover this affirmative representation. Owens asserts the circuit court failed to consider the reasonable inferences in her favor. We disagree.

We hold the circuit court did not err in granting summary judgment because

Owens's claim was within the scope of the release. *See S. Glass & Plastics Co. v. Duke*, 367 S.C. 421, 428, 626 S.E.2d 19, 22 (Ct. App. 2005) ("A release is a contract, and the scope of a release is gathered by its terms."). We find no evidence in the record establishes Caldera affirmatively represented the condition of the HVAC system to Owens or she knew the condition of the system. *See* Rule 56(c) (stating a court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Owens's contention that Caldera's email affirmatively represented the condition of the HVAC system "simply rest[s] on mere allegations or denials contained in the pleadings." *See Schmauch*, 354 S.C. at 660, 582 S.E.2d at 438 ("Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings."). We conclude Caldera's email to Owens unambiguously relayed the thoughts of Mountain Air's inspector and included attached documents related to the inspection. Therefore, there was no genuine issue of material fact. Accordingly, we affirm as to this issue.

### III. Agency

Owens argues the circuit court erred in granting summary judgment because the record contains evidence from which a factfinder could determine established that Caldera was an agent, actual or apparent, of South Market. We disagree.

We hold the circuit court did not err in finding Caldera was a licensee or independent contractor of South Market. We find Caldera and South Market established there was no evidence in the record demonstrating that an actual agency relationship existed between Caldera and South Market. *See Lanham*, 349 S.C. at 361, 563 S.E.2d at 333 ("Under Rule 56(c), the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact."). In her affidavit, Graves stated South Market had little control over Caldera and it had very little to do with the "marketing, sale, and closing" of the property. Additionally, Owens failed to "come forward with specific facts showing there [was] a genuine issue" as to the control South Market had over Caldera in the purported principal-agent relationship. *See Schmauch*, 354 S.C. at 660, 582 S.E.2d at 438 ("[T]he nonmoving party must come forward with specific facts showing there is a genuine issue for trial."); *see also Froneberger v. Smith*, 406 S.C. 37, 49, 748 S.E.2d 625, 631 (Ct. App. 2013) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the

principal's control.") (quoting Restatement (Third) of Agency § 1.01 (2006)). Rather, Owens "rest[ed] on mere allegations or denials contained in the pleadings." *See Schmauch*, 354 S.C. at 660, 582 S.E.2d at 438 ("Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings.").

Additionally, we hold Respondents established there was no dispute as to whether an apparent agency relationship existed and Owens failed to come forward with specific facts showing the existence of such a relationship. *See Lanham*, 349 S.C. at 361, 563 S.E.2d at 333 ("Under Rule 56(c), the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact."); *Schmauch*, 354 S.C. at 660, 582 S.E.2d at 438 ("[T]he nonmoving party must come forward with specific facts showing there is a genuine issue for trial."). Rather, we find Owens relies on the allegations in her pleadings to argue South Market's utilization of its logo on the release document's letterhead and Graves's failure to disavow Caldera as South Market's agent established apparent agency. *See Schmauch*, 354 S.C. at 660, 582 S.E.2d at 438 ("Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings."); *Frasier v. Palmetto Homes of Florence, Inc.*, 323 S.C. 240, 245, 473 S.E.2d 865, 868 (Ct. App. 1996) ("To establish apparent agency, it is not enough simply to prove that the purported principal by either affirmative conduct or conscious and voluntary inaction has represented another to be his agent or servant."). Furthermore, Owens failed to show any reliance and change in position she had on South Market's alleged representation of apparent authority. *See Frasier*, 323 S.C. at 245, 473 S.E.2d at 868 ("In order for a third party to recover against the principal based upon this theory, it must be shown that [s]he reasonably relied on the indicia of authority *originated by the principal* and such reliance must have effected a change of position by the third party."). Rather, Owens acknowledges in her appellate brief that she initially reached out to Caldera.

Because Caldera was a licensee and released from liability by the Release and Indemnification provision, the provision barred Owens from recovering against Caldera and South Market. Therefore, the circuit court did not err in granting summary judgment and we affirm as to this issue.

## IV.    Indemnification Claims

Owens contends she is not required to indemnify Respondents because they were

negligent.  Additionally, she argues the circuit court erred in determining a damages hearing would be the proper avenue if the parties disagreed on the amount she was to indemnify Respondents.  Rather, Owens asserts she is entitled to a jury trial, not a damages hearing, on Respondents' indemnification claims against her, regardless of the outcome of this appeal.  We disagree.

Given that (1) the Release and Indemnification provision allows for indemnification; (2) this court reviews the reasonableness of awarded attorney's fees under an abuse of discretion standard; and (3) the only amount of indemnification would be attorneys' fees and costs, we hold the circuit court did not err in ordering a damages hearing if the parties dispute the indemnification amount.  *See Ecclesiastes Prod. Ministries*, 374 S.C. at 497, 649 S.E.2d at 501 (determining "[a] release is a contract"); *Blumberg v. Nealco, Inc.*, 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993) ("The general rule is that attorney's fees are not recoverable unless authorized by contract or statute."); *id.* ("When there is a contract, the award of attorney's fees is left to the discretion of the trial judge and will not be disturbed unless an abuse of discretion is shown.").  Accordingly, we affirm as to this issue.

## CONCLUSION

Based on the foregoing, the circuit court's order granting summary judgment is

**AFFIRMED.**

**KONDUROS and VINSON, JJ., concur.**