1480

GEORGETOWN MANUFACTURING AND WAREHOUSE COMPANY and Peoples Federal Savings and Loan Association of South Carolina, Inc., Plaintiffs v. SOUTH CAROLINA DEPARTMENT OF AGRI-CULTURE, by D. Leslie TINDAL, Commissioner of Agriculture, John B. Barnes, Defendants, of whom Georgetown Manufacturing and Warehouse Company is, Appellant, and South Carolina Department of Agriculture is, Respondent.

(392 S.E. (2d) 801)

Court of Appeals

*Charles Porter* and *Celese T. Jones* of *McNair Law Firm, P.A.*, Columbia, *for appellant.*

*Sr. Asst. Atty. Gen. Kenneth P. Woodington*, and *Gen. Counsel Sally M. Rentiers* of *S.C. Dept. of Agriculture*, Columbia, *for respondent.*

Heard Feb. 21, 1990.

Decided April 2, 1990.

GARDNER, Judge:

Georgetown Manufacturing and Warehouse Company (GMW) sued the South Carolina Department of Agriculture (SCDA). The complaint alleged, *inter alia*, a breach of contract and sought damages therefor. After a bench trial, the trial judge held that there was no breach and entered judgment for the SCDA. We affirm.

## ISSUE
The only issue of merit is whether the trial judge erred in finding that the phrase "provided the agency or occupant of the space moves into a building owned . . . by the State of South Carolina" was surplusage.

## FACTS
On November 27, 1984, GMW and SCDA entered a contract whereby GMW leased, by way of a form lease, a warehouse to the SCDA. The term of the lease was for nine and one-half years beginning on January 1, 1985. The lease provided that the warehouse would be used for production, manufacturing and warehouse space. Section 5 is entitled "Cancellation Privilege"; it provides in pertinent part:

> It is further understood and agreed that while the lease term as above set out is nine and one-half years, this lease may be cancelled by the AGENCY upon the occurrence of any one or more of the following:

> (a) at the end of any fiscal year (June 30) after the commencement date when sufficient appropriations, *revenues, income, grants or other funding* from whatever source are not available to the *Occupant in the space* to carry on the purposes or programs of the AGENCY with a remainder over of funds to make the rental payments herein agreed, this sufficiency of funds to be solely determined by the State Budget and Control Board; or [Emphasis ours.]

(b) at any time upon sixty (60) days notice when the Occupant in the space is dissolved and no longer performs the function and purposes prescribed to it; or

\* \* \* \* \*

(e) it is understood and agreed that at any time after the first six (6) months from the commencement date of this lease the AGENCY or Occupant of the space hereby reserves the right to cancel this lease and vacate the above referred to premises without penalty or charge by giving one hundred twenty (120) days written notice to the LESSOR *provided the AGENCY or Occupant of the space moves into a building owned or otherwise controlled by the State of South Carolina.* [Emphasis ours.]

"Occupant" is defined, under the terms of the lease, as "the Agency or its division which is actually housed in the premises."

Dr. Homer F. Gamble was at one time a partner of GMW and at all times pertinent to this case was an agent of GMW, and is also a guarantor of all of the obligations and indebtednesses of GMW. Dr. Gamble testified that GMW entered into the lease with the understanding that the SCDA was going to use the warehouse to operate a grain exporting operation.

On the other hand Mr. Les Tindal, the South Carolina Commissioner of Agriculture, testified that (1) Dr. Gamble first approached him about establishing a facility for bagging and exporting grain, (2) that Dr. Gamble had been traveling in the Carribean and had established contacts there, (3) that ships were coming into Georgetown and going back empty and that Dr. Gamble had discovered there was a great need for bagged grain because of a lack of facilities to handle bulk grains in the small islands, and (4) that Dr. Gamble told him he could get the business started in sixty days. Mr. Tindal also testified that it was SCDA's understanding that Dr. Gamble (or GMW) was to operate the grain bagging and exporting operation. Mr. Tindal testified that the lease was an effort on the State's part to assist in helping private enterprise get started. He likened the proposed business to the Farmer's Markets in Columbia, Florence and other places.

The SCDA paid the monthly lease payments on the

warehouse from January 1985 through December 1985. On August 29, 1985, Commissioner Tindal sent a letter to GMW notifying it of the SCDA's intent to cancel the lease under the terms of subsection 5(e) of the lease. The letter also stated, "[d]ue to the fact that the facility was leased for the specific purpose of setting up a grain bagging operation for export of South Carolina grain, and due to the fact that the grain market has taken such a severe 'beating,' particularly corn, we are no longer in need of the aforenamed facility."

It is undisputed that neither the SCDA nor anyone else used the leased warehouse for any kind of operation and never occupied the warehouse.

The trial judge found the language of subsection 5(e) of the lease, after the word "provided," was intended to apply when the leased premises were being used for the purposes the parties had in mind, and was intended to prevent the SCDA or the occupant of the space from moving the operation to a competing privately leased space before the lease term expired. The court found that unless the underlined portion of the language in subsection 5(e) was regarded as surplusage, the SCDA would be required to perform an impossibility or a charade. The court found that the SCDA complied with all the *pertinent* provisions of the lease and issued an order in favor of the SCDA.

## DISCUSSION

Basic to the law of construction of contracts is the principle that the intention of the parties must be gathered from the instrument itself, giving effect to all words if possible. Stated differently, the parties' intentions must be gathered from the contents of the entire agreement and not from any particular clause thereof. *Thomas-McCain, Inc. v. Siter*, 268 S.C. 193, 232 S.E. (2d) 728 (1977).

Keeping in mind the above basic rule as to the construction of contracts, we turn to the lease before us. It is obvious to this court that the SCDA reserved to itself the right to terminate the lease if the production and manufacturing contemplated by the parties was not successful. Sections 5(a), (b) and (e) when read together clearly and unmistakenly evince this intent. And we so hold. The grain bagging and exporting operation contemplated by the

parties was not begun. The quoted sections of the termination clause (Section 5) intentionally, we hold, provided a safety net for the SCDA.

GMW strenuously argues that the underlined portion beginning with the word "provided" of Section 5(e) is determinative of the case before us. We hold that there is no merit to this contention.

Section 5(e) up to the underlined portion clearly provides that after paying the rent for six months, the SCDA may upon giving 120 days notice terminate the lease. It is undisputed that the SCDA complied with this part of Section 5(e). We agree with the trial judge that the underlined section is inapplicable because the building was never occupied. Would the law require that the SCDA have a few employees move into the building for a few days and then move back to the state offices they formally occupied? We think not. GMW cites no authority for the proposition that the law requires such an absurd procedure and we find none. Common sense and good faith are the leading touchstones of the construction of a contract and contracts are to be so construed as to avoid an absurd result. Where one construction would make a contract unusual or extraordinary and another, equally consistent, would make the contract reasonable, fair and just, the latter construction will prevail. *C.A.N. Enterprises, Inc. v. SC Health and Human Services Finance Com'n*, 296 S.C. 373, 373 S.E. (2d) 584 (1988).

## CONCLUSION

We hold that the words "provided the agency or occupant of the space moves into a building owned . . . by the State of South Carolina" are inapplicable to the situation presented to this court. The premises were never occupied. To hold that the quoted words, under the circumstances of this case, frustrate the right of SCDA to terminate the lease would constitute an absurdity. And we so hold. This is not permitted under the rules of contract construction of this state. For the reasons given, the appealed order is affirmed.

Affirmed.

SHAW and CURETON, JJ., concur.