683 S.E.2d 510

TEN WOODRUFF OAKS, LLC, Respondent,

v.

POINT DEVELOPMENT, LLC, Bef, Reit, Inc., Hollingsworth Funds, Inc., and Piedmont Natural Gas Company, Inc., Defendants,

of Whom Point Development, LLC is, Appellant.

No. 4612.

Court of Appeals of South Carolina.

Heard April 21, 2009.
Decided Aug. 31, 2009.

Jesse C. Belcher and Joel M. Bondurant, Jr., of Greenville, for Appellant.

N. Heyward Clarkson, III, and John Harjehausen, of Greenville, for Respondent.

THOMAS, J.

Ten Woodruff Oaks, LLC (TWO) brought this action seeking, among other relief, a declaration that it was the owner of an easement across property belonging to Point Development, LLC (Point). Following a hearing, the Greenville County Master–in–Equity found (1) Point's predecessor-in-title had granted an easement to TWO across the subject property; and (2) Point was bound by the grant. Point appeals the master's rulings. We affirm.

## FACTS AND PROCEDURAL HISTORY

CICC Associates (CICC), which is not involved in this appeal, was the owner and developer of 270 acres of land

located in Greenville County at New Woodruff Road and I–85. In 1998, Guy Kathe became president of the entity that was the general partner of CICC. Gilles Helou was a limited partner in CICC, and his architectural firm was a design consultant for the development project.

In 1964, a prior owner of the CICC property granted to Piedmont Natural Gas an easement for a gas booster station and a right of ingress and egress to the station. These conveyances were recorded in Greenville County; however, the public record does not indicate any corresponding plats were filed. The agreement on record refers to a right-of-way and easement of "ten feet (10') in width except for the site of the proposed regulator station . . . ."

Soon after CICC purchased its property, TWO purchased an adjoining parcel on which a 12,000–square–foot industrial warehouse was located. TWO's property was located at the corner of Woodruff Oaks Lane and Old Woodruff Road.

Old Woodruff Road, then a public right-of-way controlled by the State of South Carolina, traversed CICC's property, TWO's property, and property owned by Hollingsworth Funds, Inc. In conjunction with CICC's effort to develop its property, Kathe contacted TWO and Hollingsworth about closing Old Woodruff Road. On December 2, 1998, CICC and TWO entered into a "letter agreement" from CICC addressed to John Fort, a principal of TWO. Under this agreement, CICC would grant an easement allowing travel from a new boulevard, later named Market Point Drive, to the Piedmont Natural Gas booster station. In return, TWO would establish an ingress and egress easement between Woodruff Oaks Lane and the Piedmont Natural Gas booster station. The two easements were to overlap in front of the booster station. On January 14, 1999, the letter agreement was signed by Kathe on behalf of CICC and Fort on behalf of TWO.

According to the letter agreement, CICC would prepare the necessary documents for recognition of the easement and for relinquishment of public maintenance of Old Woodruff Road. On January 22, 1999, an application was made to the Greenville County Engineering Division requesting the County's relinquishment of the maintenance of Old Woodruff Road.

Both Kathe and Fort signed the application on behalf of their respective principals.

CICC began construction of Market Point Drive in 1999. Soon after, the curbs and median on the road were installed. During this time, CICC had ingress and egress access over TWO's property as provided in the letter agreement. When the road was constructed, a curb cut was included for the 25-foot easement.

On April 30, 1999, CICC recorded with the Greenville County Register of Deeds Office a subdivision plat of its property showing a 25-foot nonexclusive easement for ingress and egress. According to Kathe, the filing of the plat was intended to effect the abandonment of Old Woodruff Road and to supply ingress and egress access from Woodruff Oaks Lane to Market Point Drive. Furthermore, it was Kathe's understanding that the recorded plat established the easement as described in the letter agreement. Likewise, Fort testified this plat reflected what he and Kathe had agreed to regarding the abandonment of Old Woodruff Road in exchange for the nonexclusive easement that TWO would receive for access between Woodruff Oaks Lane to Market Point Drive.

On August 19, 1999, after CICC deeded a portion of its property to REEF Capital, a revised plat was recorded. This plat showed the same 25-foot ingress and egress easement that appeared on the plat filed on April 30, 1999. On March 15, 2001, CICC recorded another plat for "The Point, Phase I" commercial development that also showed the easement.

Neither TWO nor CICC ever followed through with preparing, signing, or recording any easement agreements or deeds of easement.; however, according to Kathe, there was never a recorded plat that did not show the easement.

In early 2003, Kathe left CICC. Thereafter, Helou, who was licensed as an architect in Europe and had advised CICC on architectural issues, took over as general partner of CICC. On March 17, 2003, CICC sold a portion of its property to Point, a limited liability company owned by Helou and two other individuals.

The deed to Point expressly incorporated the plat recorded by CICC on March 15, 2001, which included the ingress and

egress easement. The reference to the plat appears in a section on the deed entitled "Less and Excepting Therefrom," which also contains the familiar disclaimer that "This conveyance is made subject to all restrictions, setback lines, zoning ordinances, utility easements and rights of way, if any, as may appear of record or on the subject property."

Shortly after the conveyance to Point, a Bob Evans restaurant was constructed on a lot in the subdivision. An easement to accommodate the restaurant sign was granted and recorded on May 11, 2004, and was accompanied by a plat showing the ingress and egress easement.

In the fall of 2005, because of increased traffic on New Woodruff Road resulting from nearby commercial development, TWO decided to pave the easement. On October 24, 2005, counsel for Point notified TWO's attorney by letter that Point was taking the position that the easement shown on the various plats "was merely to denote the access route for the gas regulator station." The attorney also warned that any attempt by TWO to make road improvements in that location would be treated as a trespass.

On November 9, 2005, TWO filed this action against Point, Piedmont Natural Gas Company, and other defendants not involved in this appeal, seeking a declaratory judgment of ownership rights to the easement. TWO also sought damages against Point for interference with property rights and injunctive relief to secure the use and enjoyment of the easement. On November 18, 2005, Point answered, generally denying the allegations in TWO's complaint. TWO later amended its complaint to add causes of action against Point for breach of contract, promissory estoppel, and abuse of process.

The matter was later bifurcated for a jury trial on TWO's claims for damages and a reference to the master to adjudicate TWO's other causes of action. On May 18, 2007, the master held a hearing on TWO's equitable claims. By order filed June 12, 2007, the master issued an order in which he concluded TWO had a non-exclusive 25–foot private easement from Woodruff Oaks Lane across the subject property and connecting with Market Point Drive. The master further found (1) the easement was an express easement by grant and was valid as to subsequent purchasers without notice because

it was set forth on recorded plats; and (2) Point did not fulfill its burden to present clear and unequivocal evidence that TWO abandoned the easement. After denial of its motion to reconsider, Point filed this appeal.

## ISSUES

I. Did the master err in finding the letter agreement created an express easement by grant from CICC to TWO?

II. Did the master err in finding Point had constructive notice of TWO's ownership rights in the easement?

## STANDARD OF REVIEW

■■ "The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury." *Slear v. Hanna*, 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998). A finding concerning notice, however, is reviewed to determine if it is supported by the preponderance of the evidence. Cf. *Anderson v. Buonforte*, 365 S.C. 482, 492, 617 S.E.2d 750, 755 (Ct.App.2005) (upholding a special referee's finding concerning actual notice as "supported by the weight of the evidence within the record").

## LAW/ANALYSIS

### I. Creation of an Easement

■ In support of its position that an easement from CICC to TWO was never created, Point contends that the letter agreement that CICC and TWO signed was at best a contract evidencing the parties' intent to create an easement upon the preparation and recording of various legal documents. Point further asserts CICC and TWO failed to follow through on numerous issues that were either required or contemplated by the letter agreement, such as the preparation of reciprocal easement agreements and a specific description of the easement terms. We disagree.

■ "As a general rule, to constitute a grant of an easement, any words clearly showing the intention to grant an easement are sufficient." 25 Am.Jur.2d *Easements and Li-*

*censes* § 15, at 512 (2004). "Whether a grant in a written instrument creates an easement and the type of easement created are to be determined by ascertaining the intention of the parties as gathered from the language of the instrument; the grant should be construed so as to carry out that intention." *Smith v. Comm'rs of Pub. Works of City of Charleston,* 312 S.C. 460, 466, 441 S.E.2d 331, 335 (Ct.App.1994). "If the language is uncertain or ambiguous in any respect, all the surrounding circumstances, including the construction which the parties have placed on the language, may be considered by the court, to the end that the intention of the parties may be ascertained and given effect." 25 Am.Jur.2d *Easements* § 18, at 516 (2004).[1]

We recognize the letter agreement has language suggesting the agreement to establish an easement could be executory in nature; however, contrary to what Point argues, this language does not indicate the easement CICC intended to grant to TWO was contingent on the completion of the various tasks enumerated in the letter. As a practical matter, enjoyment of the interest would require physical preparation of the grounds subject to the easement, and legal work would have been necessary to ensure that the easement remained enforceable as to subsequent title holders of the estates involved.[2] Moreover, preliminary work for the easement had in fact begun, including the closing of Old Woodruff Road, construction on Market Point Drive, and the installation of the curbs and median on the road soon after. For these reasons, we reject Point's contention that the letter agreement unambiguously expressed that it did not constitute the grant or creation of an easement.

---

1. In *Smith,* this Court cited to the same principle as it appeared in an earlier edition of American Jurisprudence Second. *Smith v. Comm'rs of Public Works of City of Charleston,* 312 S.C. 460, 466, 441 S.E.2d 331, 335 (Ct.App.1994) (citing 23 Am.Jur.2d *Easements and Licenses* § 23 (1966)).

2. In the appealed order the master noted that "[a]lthough CICC could have prepared additional documents evidencing the easement, ... [its] failure to do so does not invalidate the express grant of the easement to Ten Woodruff Oaks." We agree that any failure by CICC to record these additional documents does not affect the validity of the easement "[a]s between the parties thereto." *Epps v. McCallum Realty Co.,* 139 S.C. 481, 487, 138 S.E. 297, 302 (1927).

The master found "that the letter evidenced CICC's express grant of an easement across its property allowing the adjoining landowners to travel from Woodruff Oaks Lane to Market Point Drive." In making this finding, the master noted he relied on the testimony of both Kathe and Fort, both of whom were sophisticated individuals with substantial business experience and testified to the effect that access rights over CICC's property were effective as of April 30, 1999, when CICC recorded a plat showing the easement as a 25–foot non-exclusive ingress and egress easement. Furthermore, the abandonment of Old Woodruff Road resulted in substantial benefit to CICC both in the form of more saleable land for individual lots and in the fact that negotiation of the abandonment required an agreement with only TWO rather than with a variety of property owners. In addition, construction of Market Point Drive began in 1999, and a curb cut was included for the 25–foot easement. Finally, there appears to be no dispute CICC received ingress and egress access across TWO's property as contemplated in the letter agreement and exercised this right. Thus the alleged deficiencies cited by Point are not sufficient reason to reverse the master's finding that CICC made an express grant of an easement across its property allowing travel from Woodruff Oaks Lane to Market Point Drive.

Based on the foregoing, we hold the master correctly relied on evidence outside the letter agreement in determining the effect of the agreement. We also hold this evidence supports the master's interpretation of the agreement as one creating an easement interest rather than as an expression of the intent to do so upon the satisfaction of certain terms.

## II. Constructive Notice

Point next contends that even if the letter agreement is deemed sufficient to constitute the express grant of an easement from CICC to TWO, the master erred in finding the plat on record that was incorporated into Point's deed was sufficient notice of TWO's purported easement. Specifically, Point advances the following arguments: (1) the master incorrectly relied on authority concerning actual rather than constructive notice of an easement; (2) the easement granted to Piedmont Natural Gas in 1964, which was properly prepared

and recorded, explained the presence of the platted ingress and egress easement referenced in Point's deed; and (3) the master's decision is untenable from a policy standpoint because it rewards TWO for its failure to follow through on the letter agreement and punishes Point for relying on properly recorded documents. We disagree with these arguments.

██ "[C]onstructive notice or inquiry notice in the context of a real estate transaction often is grounded in an examination of the public record because it is the proper recording of documents asserting an interest or claim in real property which gives constructive notice to the world." *Spence v. Spence,* 368 S.C. 106, 119, 628 S.E.2d 869, 876 (2006). Constructive notice, however, is not limited to what is ascertainable from consulting public records. As the supreme court has explained:

> Constructive or inquiry notice in the context of a real estate transaction *also* may arise when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another. The party will be charged by operation of law with *all* knowledge that an investigation by a reasonably cautious and prudent purchaser would have revealed.

*Id.* at 120, 628 S.E.2d at 876 (emphases added). In making these statements, the court emphasized " 'the principle that the party is bound to the exercise of due diligence, and is assumed to have the knowledge to which that diligence would lead him,' " noting also that " '[t]here must appear to be, *in the nature of the case,* such a connection between the facts disclosed and further facts to be discovered, that the former could justly be viewed as furnishing a clue to the latter.' " *Id.* at 120–21, 628 S.E.2d at 876 (quoting *Black v. Childs,* 14 S.C. 312, 321–22 (1880)) (emphasis added). *Cf. Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 64–65, 504 S.E.2d 117, 123 (1998) (noting that under South Carolina case law implied actual notice is classified as constructive notice because of the duty to inquire).

Point correctly notes the master never expressly found it had actual notice of the easement and that *Frierson v. Watson,* 371 S.C. 60, 636 S.E.2d 872 (Ct.App.2006), one of the decisions on which the master relied in finding the recorded

plats referenced in its deed provided adequate notice, concerned actual rather than constructive notice of an easement. Whether or not *Frierson* supports the master's decision regarding constructive notice, the facts of this case support a finding that Point could be charged with inquiry notice of the easement notwithstanding the alleged deficiencies in the public record.

The conveyance from CICC to Point was "subject to all restrictions, setback lines, zoning ordinances, utility easements and rights of way, if any, as may appear of record or on the subject property." The deed expressly referenced a plat showing a 25–foot non-exclusive ingress and egress easement. That plat expressly indicated the easement was non-exclusive and specified its width, length, and location. The deed of conveyance itself, therefore, provided inquiry notice to Point of the encumbrance. *See Carolina Land Co. v. Bland,* 265 S.C. 98, 105, 217 S.E.2d 16, 19 (1975) ("[W]here a deed describes land as is shown as a certain plat, such becomes a part of the deed."). Subsequent conveyances also referenced plats showing the same easement.

Because constructive notice is not necessarily confined to the public record, we disagree with Point's argument that its belief that the easement referred to in the plats was the recorded easement to Piedmont Natural Gas was reasonable because "there was no document whatsoever in the public domain that would even remotely indicate that that easement was anything other than the recorded [Piedmont Natural Gas] Ingress/Egress Easement." As noted in the appealed order, the 1964 deed referenced a 10–foot easement and the subsequent plats show a 25–foot non-exclusive ingress and egress easement. Even if we accept Point's apparent position that the discrepancy could be explained by the fact that the 1964 deed granted Piedmont Natural Gas both a pipeline easement and an access easement, this explanation is at best plausible rather than conclusive. It did not absolve Point of the responsibility to investigate whether the ingress and egress easement conveyed to Piedmont Natural Gas in 1964 was in fact the same easement as that depicted in the plat referenced in its deed.

As the master noted, not only did CICC file numerous plats including the one referenced in Point's deed depicting the easement, it made a formal application to the Greenville County Engineering Division for the relinquishment of maintenance of Old Woodruff Road and recognition of the easement. Furthermore, whether or not Helou had actual notice of the easement, we cannot ignore that he had been a limited partner in CICC since its formation in 1998 and took over the responsibilities of general partner in 2003 after Kathe's departure. According to the master, he also "executed on behalf of CICC the deed conveying title of 'The Point, Phase I' development to his newly formed company Point Development, Inc." Given Helou's relationship with both CICC and Point, the contact with authorities about matters related to the easement and the plats on record, we find it unlikely that Point would not have had at its disposal the means for ascertaining the ownership and nature of the easement at issue in this appeal.

■■ Finally, we reject Point's argument that affirmance of the master's order would be against public policy. As we have emphasized, the determination of whether Point had constructive notice depends on more than what public records can verify. To the contrary, a resolution of this question includes consideration of "circumstances sufficient to put a party upon the inquiry." *Black v. Childs*, 14 S.C. 312, 321–22 (1880) *(quoted in Spence*, 368 S.C. at 120, 628 S.E.2d at 876). Even if we were to concede that TWO did not act promptly to perfect its easement,[3] we find no reason to believe that this failure prevented Point from ascertaining the nature and extent of the encumbrance depicted on the plat referenced in its deed. Point's decision to ignore such circumstances and rely solely on a title search cannot be viewed as reasonable. We therefore reject Point's argument that the master's decision to uphold the easement is untenable from a policy standpoint.

## CONCLUSION

We affirm the master's decision finding the letter agreement of December 2, 1998, created an access easement from

---

3. We note Point does not appeal the master's finding that it failed to carry its burden to present clear and unequivocal evidence that TWO abandoned the easement.

CICC to TWO. We further hold that the circumstances of this case support the master's finding that Point had constructive notice of this easement.

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.