# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Susan Brooks Knott Floyd, Respondent,

v.

Elizabeth Pope Knott Dross, Appellant.

Appellate Case No. 2020-001354

———————

Appeal from Berkeley County
Roger M. Young, Sr., Circuit Court Judge

———————

Opinion No. 6044
Heard September 13, 2023 – Filed January 17, 2024

———————

## REVERSED AND REMANDED

———————

John William Fletcher, of Barnwell Whaley Patterson &
Helms, LLC, and Joshua Steven Whitley, of Smyth
Whitley, LLC, both of Charleston, and Todd Maurice
Hess, of Wesley Chapel, North Carolina, for Appellant.

George Trenholm Walker and Charles P. Summerall, IV,
both of Walker Gressette & Linton, LLC, of Charleston,
for Respondent.

———————

**GEATHERS, J.:** In this declaratory judgment action, Appellant Elizabeth Pope
Knott Dross (Betsy) seeks review of the circuit court's order granting partial
summary judgment to Respondent Susan Brooks Knott Floyd (Susan). Betsy argues
the circuit court erred by concluding that Susan had an express easement over the

roads on Betsy's property in order to access Susan's property.  We reverse the circuit court's order and remand for further proceedings in this case.

## FACTS/PROCEDURAL HISTORY

In 2004, Benjamin Franklin Knott (Father) executed a will granting each of his daughters, Susan and Betsy, approximately one-half of a 371-acre tract of land (the Unified Tract) near Huger in Berkeley County (Susan's Parcel and Betsy's Parcel).  The Unified Tract was subject to a conservation easement (the Conservation Easement) that Father had previously given to Wetlands America Trust, Inc., a non-profit organization affiliated with Ducks Unlimited, Inc. and dedicated to the conservation of natural areas.[1]

---

[1] The South Carolina Conservation Easement Act of 1991 allows property owners to create a conservation easement in the same manner as other easements.  S.C. Code Ann. § 27-8-30(A) (2007).  A conservation easement is defined as "a nonpossessory interest of a holder in real property imposing limitations or affirmative obligations" for any of the following purposes:

> (a) retaining or protecting natural, scenic, or open-space aspects of real property;
>
> (b) ensuring the availability of real property for agricultural, forest, recreational, educational, or open-space use;
>
> (c) protecting natural resources;
>
> (d) maintaining or enhancing air or water quality;
>
> (e) preserving the historical, architectural, archaeological, or cultural aspects of real property.

S.C. Code Ann. § 27-8-20(1) (2007).  Section 27-8-20(2) defines a "holder" as

> (a) a governmental body empowered to hold an interest in real property under the laws of this State or the United States; or

The only direct road frontage for the Unified Tract was Cainhoy Road, west of, and adjacent to, the area that would become Betsy's Parcel upon Father's death. There was also indirect access to the Unified Tract from Charity Church Road, east of the Unified Tract, through a parcel adjacent to the Unified Tract that Susan already owned at the time Father executed his will in 2004 (the Access Parcel).

Conveniently, the Access Parcel was adjacent to the half of the Unified Tract that would become Susan's Parcel upon Father's death. The Access Parcel fronted Charity Church Road and provided vehicular access to the Unified Tract.[2] Father had conveyed the Access Parcel to Susan in 1996, but Susan sold almost all of this property in 2007 to WH Land Company, LLC for $4,000,000; Susan retained ten acres bordering the part of the Unified Tract that would later become Susan's Parcel. Although this resulted in Susan's Parcel and the adjacent ten acres becoming landlocked,[3] Susan retained an easement over the part of the Access Parcel that she sold.

Father died on November 18, 2009, and Susan and Betsy received deeds of distribution to their respective parcels on January 11, 2011. Subsequently, in 2015, Susan agreed to terminate her easement over the Access Parcel in favor of its owner—WH Land Company, LLC. Approximately three years later, Susan asked Betsy if she could use Betsy's Parcel to access Susan's Parcel. According to Susan, Betsy rejected Susan's request. Susan has also claimed that she

---

(b) a charitable, not-for-profit or educational corporation, association, or trust the purposes or powers of which include one or more of the purposes listed in subsection (1).

S.C. Code Ann. § 27-8-20(2) (2007). In the present case, Father executed the Conservation Easement in 1998. The Conservation Easement refers to the Unified Tract as the "Protected Property."

[2] Susan admitted that she had vehicular access to the Unified Tract through the Access Parcel, but she qualified her admission by stating that the access was not available when hazardous road conditions occurred.

[3] Property is landlocked when it is "[s]urrounded by land, with no way to get in or out except by crossing the land of another." *Landlocked*, Black's Law Dictionary (11th ed. 2019).

requested access from Betsy to reach [Susan's] Parcel to undertake activities in furtherance of the Conservation Easement purposes, including: (1) to preserve and protect the "Whiskey Still Dam" from erosion in order to maintain a large Cypress Pond[,] which is one of the "conservation values" on [Susan's] Parcel identified in the Baseline Report;[4] and (2) to harvest some timber on [Susan's] Parcel.

According to Betsy,

The road system on Betsy's Parcel is fragile. Part of it is built on a water embankment. When heavy rains are present in the area [or] when property owners upstream of Betsy's Parcel release water from their land, part of the road system on Betsy's Parcel washes over with water and becomes impassable. [Betsy and her] husband have invested considerable time, effort, and money maintaining these roads so that they are passable under fair-weather conditions. If [they] had not, part of the road system would have completely washed away.

On September 20, 2019, Susan filed the present action. In her amended complaint, Susan sought a judgment declaring, *inter alia*, that (1) she had "an appurtenant easement and right to use Duck Pond Road crossing over Betsy's [P]arcel for all activities permitted under the Conservation Easement" and (2) Betsy was required to "provide Susan at all times with the key or code to Betsy's locked gate." Susan claimed that she had an express easement over Betsy's Parcel purportedly created by the language in section 4 of the Conservation Easement, which states, in pertinent part:

---

[4] The "Baseline Report" referenced by Susan is actually entitled the "Baseline Documentation Report" (the Report). The Report documents "the specific conservation values of the Protected Property on the date of" the Conservation Easement's execution. The Report was represented by the parties to the Conservation Easement to provide "an accurate representation of the Protected Property and the condition of the same as of the" Conservation Easement's execution date. The Conservation Easement also provided that the Report was "intended to serve as an objective informational baseline for monitoring compliance with the terms of" the Conservation Easement.

## RESERVED RIGHTS

Notwithstanding any provision to the contrary contained in this Easement, the Grantor *reserves for himself, his heirs, successors and assigns* the "Reserved Rights" set forth in this Section.

4.  The exercise of all Reserved Rights will be in full accordance with all applicable local, state and federal laws and regulations, as well as in accordance with the intent and Purpose of this Easement.  Grantor hereby agrees to give written notice to the Grantee prior to constructing any new buildings or extracting any minerals pursuant to the Reserved Rights contained herein.

. . . .

4.3  <u>Roads</u>.  The right to maintain and replace existing roads at the same location with roads of like size and composition.  The right to construct new roads to the New Structures using permeable materials (e.g.[,] sand, gravel, crushed stone).  Grantor shall use existing roads whenever possible for access to the New Structures.  The right to widen existing roads for utility rights-of-way. *The right to use roads for all activities permitted under this Easement.*  Maintenance of roads shall be limited to normal practices for non-paved roads, such as the removal of dead vegetation, scraping and crowning, necessary pruning or removal of hazardous trees and plants, application of permeable materials necessary to correct erosion, placement of culverts, water control structures, and bridges, and maintenance of roadside ditches.

(emphases added).

Susan's amended complaint also asserted claims for "Reformation of Deeds of Distribution," "Easement Implied By Prior Use," "Easement By Necessity," and an injunction preventing Betsy from locking out Susan "or otherwise impeding her

right to use that portion of Duck Pond Road crossing over Betsy's Parcel to access Susan's Parcel for all activities permitted under the Conservation Easement."

Betsy filed an answer and counterclaim, seeking a judgment declaring that Susan had "no easement of any kind over Betsy's Parcel and [did] not otherwise have any rights regarding Betsy's Parcel." Subsequently, Susan filed a motion for partial summary judgment as to her express easement claim and Betsy's counterclaim. After conducting a hearing on the motion, the circuit court granted partial summary judgment to Susan, concluding,

> Pursuant to the unambiguous terms of the governing Conservation Easement, including the expressly reserved rights in Section 4.3 thereof, Susan, as owner of approximately half of the Conservation Easement Property, has the right to use the roads crossing over Betsy's Parcel to access Susan's Parcel for all activities permitted under the Conservation Easement[.]

Specifically, the circuit court ordered, "[T]his partial summary judgment is granted pursuant to the First Cause of Action for Declaratory Judgment in Susan's Amended Complaint, and the [c]ourt hereby denies Betsy's Counterclaim to the extent it requests a Declaratory Judgment that Susan has no right to use the roads crossing over Betsy's Parcel." The circuit court later denied Betsy's Rule 59(e), SCRCP, motion. This appeal followed.

## ISSUES ON APPEAL

I.    Did the circuit court err by concluding that the Conservation Easement's disputed language was unambiguous?

II.   Did the circuit court err by concluding that the Conservation Easement's language expressly created a right for Susan to use the roads on Betsy's Parcel to access Susan's Parcel?

III.  Did the circuit court err by granting partial summary judgment to Susan when there was evidence that Susan's conduct was not equitable?

IV.   Does the circuit court's construction of the Conservation Easement produce an unreasonable result?

V.     Does the Conservation Easement Act preclude Susan's claims?

## STANDARD OF REVIEW

This court reviews the grant of a summary judgment motion under the same standard applied by the circuit court pursuant to Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n.2, 677 S.E.2d 612, 614 n.2 (Ct. App. 2009). Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party." *Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

Likewise, "[o]n appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below." *Id.* Further, "[w]hen a circuit court grants summary judgment on a question of law, this [c]ourt will review the ruling de novo." *Wright v. PRG Real Est. Mgmt., Inc.*, 426 S.C. 202, 212, 826 S.E.2d 285, 290 (2019).

## LAW/ANALYSIS

Betsy's issues I, II, and IV all assign error to the circuit court's interpretation of section 4 of the Conservation Easement. Accordingly, we will combine these issues for purposes of our analysis. For the reasons that follow, we agree with Betsy's argument that the language in section 4 did not create a right for Susan to access Susan's Parcel via the roads on Betsy's Parcel.

"An easement is a right to use the land of another for a specific purpose." *Snow v. Smith*, 416 S.C. 72, 84, 784 S.E.2d 242, 248 (Ct. App. 2016). "An easement may be established by express grant or by express reservation in a deed or other instrument." 12 S.C. Juris. *Easements* § 6 (citing *Sandy Island Corp. v. Ragsdale*, 246 S.C. 414, 419, 143 S.E. 2d 803, 806 (1965)); *see also Windham v. Riddle*, 381 S.C. 192, 201, 672 S.E.2d 578, 582 (2009) ("An easement may be created by reservation in a deed.").

"A grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments." *Binkley v. Rabon Creek Watershed*

*Conservation Dist. of Fountain Inn*, 348 S.C. 58, 71, 558 S.E.2d 902, 909 (Ct. App. 2001) (quoting 28A C.J.S. *Easements* § 57 at 235 (1996)). Further, deeds may be construed using the rules of contract interpretation. *See S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001) (applying the rules of contract construction to a restrictive covenant in a deed).

> Common sense and good faith are the leading touchstones of the construction of a contract[,] and contracts are to be so construed as to avoid an absurd result. Where one construction would make a contract unusual or extraordinary and another, equally consistent, would make the contract reasonable, fair[,] and just, the latter construction will prevail.

*McCune v. Myrtle Beach Indoor Shooting Range, Inc.*, 364 S.C. 242, 248, 612 S.E.2d 462, 465 (Ct. App. 2005) (quoting *Georgetown Mfg. & Warehouse Co. v. S.C. Dep't of Agric.*, 301 S.C. 514, 518, 392 S.E.2d 801, 804 (Ct. App. 1990)).

Further, "[w]hen a deed is unambiguous, any attempt to determine the grantor's intent when reserving the easement must be limited to the deed itself, and using extrinsic evidence to contradict the plain language of the deed is improper." *Snow*, 416 S.C. at 85, 784 S.E.2d at 248. "The determination of the grantor's intent when reviewing a clear and unambiguous deed is . . . a question of law for the court." *Id.* (quoting *Proctor v. Steedley*, 398 S.C. 561, 573, 730 S.E.2d 357, 363 (Ct. App. 2012)). "[T]his court must construe unambiguous language in the grant of an easement according to the terms the parties have used." *Id.* (alteration in original) (quoting *Plott v. Justin Enters.*, 374 S.C. 504, 513–14, 649 S.E.2d 92, 96 (Ct. App. 2007)). "In determining the grantor's intent, *the deed must be construed as a whole and effect given to every part if it can be done consistently with the law*. The intention of the grantor must be found within the four corners of the deed." *Proctor*, 398 S.C. at 573, 730 S.E.2d at 363 (quoting *Windham*, 381 S.C. at 201, 672 S.E.2d at 582–83).

"As a general rule, to constitute a grant of an easement, any words clearly showing the intention to grant an easement are sufficient." *Ten Woodruff Oaks, LLC v. Point Dev., LLC*, 385 S.C. 174, 180, 683 S.E.2d 510, 513 (Ct. App. 2009) (quoting 25 Am. Jur. 2d *Easements and Licenses* § 15 at 512 (2004)). "Whether a grant in a written instrument creates an easement and the type of easement created are to be determined by ascertaining the intention of the parties as gathered from the language of the instrument; the grant should be construed so as to carry out that intention."

*Id.* at 181, 683 S.E.2d at 513 (quoting *Smith v. Comm'rs of Pub. Works of City of Charleston*, 312 S.C. 460, 466, 441 S.E.2d 331, 335 (Ct. App. 1994)). "If the language is uncertain or ambiguous in any respect, all the surrounding circumstances, including the construction [that] the parties have placed on the language, may be considered by the court, to the end that the intention of the parties may be ascertained and given effect." *Id.* (quoting 25 Am. Jur. 2d *Easements* § 18 at 516 (2004)). "Whether the language of a contract is ambiguous is a question of law to be determined by the court from the terms of the contract as a whole. In making this determination, the court must examine the entire contract and not merely whether certain phrases taken in isolation could be interpreted in more than one way." *State Accident Fund v. S.C. Second Inj. Fund*, 388 S.C. 67, 75, 693 S.E.2d 441, 445 (Ct. App. 2010) (per curiam) (citation omitted)).

As we previously stated, section 4 of the Conservation Easement provides, in pertinent part:

## RESERVED RIGHTS

Notwithstanding any provision to the contrary contained in this Easement, the Grantor *reserves for himself, his heirs, successors and assigns* the "Reserved Rights" set forth in this Section.

4. The exercise of all Reserved Rights will be in full accordance with all applicable local, state and federal laws and regulations, as well as in accordance with the intent and Purpose of this Easement. Grantor hereby agrees to give written notice to the Grantee prior to constructing any new buildings or extracting any minerals pursuant to the Reserved Rights contained herein.

. . . .

4.3   <u>Roads</u>.   The right to maintain and replace existing roads at the same location with roads of like size and composition. The right to construct new roads to the New Structures using permeable materials (e.g.[,] sand, gravel, crushed stone). Grantor shall use existing roads whenever possible for access to the New Structures. The right to widen existing roads for utility rights-of-way. *The*

*right to use roads for all activities permitted under this Easement.*  Maintenance of roads shall be limited to normal practices for non-paved roads, such as the removal of dead vegetation, scraping and crowning, necessary pruning or removal of hazardous trees and plants, application of permeable materials necessary to correct erosion, placement of culverts, water control structures, and bridges, and maintenance of roadside ditches.

(emphases added). The purpose of section 4 as a whole is for the Protected Property's owner to reserve the right to use the property in various ways as against the Conservation Easement's holder, Ducks Unlimited.[5]  For example, subsections 4 and 12 reserve the rights to hunting and harvesting timber, respectively.  Thus, we view the reserved right to use the roads set forth in subsection 3 as comparable to an easement by reservation in a deed.  *See Sandy Island Corp.*, 246 S.C. at 419, 143 S.E.2d at 806 ("A reservation of an easement in a deed by which lands are conveyed is equivalent, for the purpose of the creation of the easement, to an express grant of the easement by the grantee of the lands.").

Accordingly, the language of section 4.3 grants to Father (and his heirs, successors, and assigns) an easement by reservation over the roads on the Protected Property as against Ducks Unlimited.  Therefore, we disagree with Susan's assertion that this easement as against Ducks Unlimited translates into her own easement as against Betsy.  In support of this assertion, Susan argues: (1) the Conservation Easement envisioned that the Unified Tract would be subdivided because section 4.1 reserves the right to subdivide the Unified Tract into two parcels; (2) "there would be no need for the owner of property to reserve a right to use the roads on the owner's property," as Father did in section 4.3; and (3) therefore, the "reasonable interpretation . . . of this reserved right [section 4.3] is that it was to allow access over the other half of the Conservation Easement Property *to gain access to the interior half once it was subdivided*."  (emphasis added).

First, the nature of a conservation easement imposes restrictions on a property owner's use of his own land in order to conserve natural areas.  *See* S.C. Code Ann. § 27-8-20 (2007) ("As used in this chapter, unless the context otherwise requires: (1) 'Conservation easement' means a nonpossessory interest of a holder in real property *imposing limitations or affirmative obligations*, the purposes of which include one

---

[5] As we previously stated, the Conservation Easement refers to the Unified Tract as the "Protected Property."

or more of the following: (a) retaining or protecting natural, scenic, or open-space aspects of real property; (b) ensuring the availability of real property for agricultural, forest, recreational, educational, or open-space use; (c) protecting natural resources; (d) maintaining or enhancing air or water quality; (e) preserving the historical, architectural, archaeological, or cultural aspects of real property." (emphasis added)). The Conservation Easement executed by Father recognizes these "voluntary restrictions."

It logically follows that, despite Susan's argument to the contrary, the property owner who creates a conservation easement needs to expressly reserve the right to engage in certain activities on the property if he wishes to clearly exclude those activities from the broadly-worded restrictions on the property's use in other provisions of the conservation easement. Therefore, there is no reason to assign another, more limited purpose to section 4.3 (i.e., to access Susan's parcel).

Further, Susan's argument is inconsistent with her assertion that the language in the Conservation Easement is clear and, thus, the court may not look to outside evidence. Nothing in section 4 expressly states that the purpose of subsection (3) was to provide access to a future subdivided, "interior" (i.e., landlocked) parcel. In fact, nothing in the language of the Conservation Easement or the Report indicates that access to any future subdivided parcel would be impeded. Even considering the fact that Father's 2004 will effectively subdivided the Unified Tract into Betsy's Parcel and Susan's Parcel is looking to evidence outside of, and postdating, the language of the 1998 Conservation Easement. And to support her assertion regarding the purpose of section 4.3, Susan must reference outside evidence showing that there was only one way to access the Unified Tract when Father executed the Conservation Easement in 1998 and that a future subdivision of the tract into two parcels would necessarily render one of the parcels landlocked. Therefore, Susan's argument that the purpose of section 4.3 was to *allow access* to the Protected Property's *interior* half is not supported by the Conservation Easement's plain language.

Moreover, Susan's argument is inconsistent with a reading of section 4 as a whole. *See Proctor*, 398 S.C. at 573, 730 S.E.2d at 363 ("In determining the grantor's intent, *the deed must be construed as a whole and effect given to every part if it can be done consistently with the law*." (quoting *Windham*, 381 S.C. at 201, 672 S.E.2d at 582–83)).[6] Applying Susan's interpretation of section 4.3 would produce an

---

[6] Susan effectively concedes that reading section 4 as a whole is the correct way to interpret the language in section 4.3 by her assertion that section 4.1 (reserving the

unreasonable result because this provision is merely a subset of section 4, which reserves *several* rights belonging to the owner of the Protected Property. *See McCune*, 364 S.C. at 248, 612 S.E.2d at 465 ("Common sense and good faith are the leading touchstones of the construction of a contract and contracts are to be so construed as to avoid an absurd result." (quoting *Georgetown Mfg. & Warehouse Co.*, 301 S.C. at 518, 392 S.E.2d at 804)). If Susan has the right to use the roads on *Betsy's* parcel pursuant to section 4.3, it logically follows that she must have all of the other owner's reserved rights set forth in section 4 as to Betsy's Parcel. Yet, to allow Susan to have all of the reserved rights set forth in section 4 as to Betsy's property would devalue Betsy's ownership interest in her parcel. *See Inlet Harbour v. S.C. Dep't of Parks, Recreation & Tourism*, 377 S.C. 86, 96, 659 S.E.2d 151, 156 (2008) ("Absent an easement or a license, a landowner generally enjoys no right to use the land of another."); *see also Floyd v. Chapman*, 838 S.E.2d 99, 104 (Ga. Ct. App. 2020) ("The term 'property' includes not only the land possessed, but also the rights of the owner in relation to that land. The owner has the rights to possess, use[,] and dispose of the property and the corresponding right to exclude others from using the property." (quoting *Pope v. Pulte Home Corp.*, 539 S.E.2d 842, 843 (Ga. Ct. App. 2000))). Rather, once Susan and Betsy received the deeds to their respective parcels, they held all of the rights set forth in section 4 as to only their own respective parcels as against only Ducks Unlimited.

Susan states that she "is asking the [c]ourt to affirm only her express right to use the roads to access Susan's Parcel to protect conservation values and exercise reserved rights on Susan's Parcel, not on Betsy's Parcel. Susan is not asking to exercise proprietary rights associated with Betsy's Parcel." However, all of the rights reserved in section 4, including the right to use the roads, are proprietary rights. And, as we previously stated, there is no reason to attribute a special purpose, such as access to a subdivided parcel, to just one of the reserved rights separate and apart from the others when the plain language does not call for that. Section 4.3 allows use of the roads "for all activities permitted under" the Conservation Easement. It does not reference access to any part of the Unified Tract. Further, consistent with existing property law allowing a property owner to exclude others from his property,[7] section 2.2 of the Conservation Easement clearly limits access rights to

right to subdivide the Unified Tract into two parcels) has a bearing on the meaning of section 4.3.

[7] *See Inlet Harbour*, 377 S.C. at 96, 659 S.E.2d at 156 ("Absent an easement or a license, a landowner generally enjoys no right to use the land of another."); *Floyd*, 838 S.E.2d at 104 ("The term 'property' includes not only the land possessed, but also the rights of the owner in relation to that land. The owner has the rights to

the whole Unified Tract (or both future subdivided parcels) to the grantee (Ducks Unlimited) and its agents:

> 2.2 <u>Right of Entry and Access</u>. At reasonable times and upon reasonable notice, the Grantee shall have the right to enter the Protected Property for the purposes of inspecting same to determine compliance herewith. The right of entry and access herein described does not extend to the public *or any person or entity other than the Grantee, its agents, employees, successors, and/or assigns*.

(emphasis added).

Additionally, section 4.21 reserves the right to grant easements provided they do not permit a use inconsistent with the Conservation Easement's purpose:

> 4.21 <u>Easements and Rights of Passage</u>. The right to grant easements or rights of passage across or upon the Protected Property if such rights are (i) used exclusively by an adjacent property owner and not in connection with an industrial activity or a commercial activity of a type and nature not permitted by this Easement[;] (ii) required or convenient in connection with the permitted utilities on the Protected Property; or (iii) required or convenient in connection with the uses of the Protected Property permitted by this Easement.

Expressly addressing the right to grant easements in subsection 21 of section 4 further demonstrates that Father did not intend for subsection 3 to address access to a future subdivided parcel—subsection 21 gave Father and his successors all the authority needed to grant an easement over any part of the Unified Tract for any purpose consistent with the Conservation Easement's purpose. *See Proctor*, 398 S.C. at 573, 730 S.E.2d at 363 ("In determining the grantor's intent, *the deed must be construed as a whole and effect given to every part if it can be done consistently with the law*." (quoting *Windham*, 381 S.C. at 201, 672 S.E.2d at 582–83)); *Ten Woodruff Oaks, LLC*, 385 S.C. at 181, 683 S.E.2d at 513 ("Whether a grant in a written

---

possess, use and dispose of the property and the corresponding right to exclude others from using the property." (quoting *Pope*, 539 S.E.2d at 843)).

instrument creates an easement and the type of easement created are to be determined by ascertaining the intention of the parties as gathered from the language of the instrument; the grant should be construed so as to carry out that intention." (quoting *Smith*, 312 S.C. at 466, 441 S.E.2d at 335)).

Even if we were to consider the language of section 4.3 to be ambiguous such that we may consider evidence outside of the Conservation Easement's plain language, we would still conclude that Father did not intend to grant an express easement over Betsy's Parcel to access Susan's Parcel. First, the introductory language at the beginning of section 4 states, "the Grantor *reserves for himself, his heirs, successors[,] and assigns* the 'Reserved Rights' set forth in this Section." (emphasis added). Admittedly, to determine the specific identity of those who qualify as one of Father's "heirs, successors[,] and assigns," as set forth in the introductory language at the beginning of section 4, requires looking beyond the language of the Conservation Easement itself. Susan claims that she is a successor in title to Father, but she cannot establish this fact without reference to the deed of distribution conveying the subdivided parcel, consisting of 189.35 acres, to her.

Further, the language in this deed immediately following the property description clearly indicates that Susan may qualify as a successor in title to Father as to only the 189.35 acres set forth in the property description, not the full Unified Tract: "TOGETHER with all and singular, the Rights, Members, Hereditaments[,] and Appurtenances to the *said* Premises/Property belonging, or in anywise incident or appertaining." (emphasis added). It logically follows from the plain language of *this* provision that (1) as to the deed granting Susan's Parcel to Susan, the rights and appurtenances granted to Susan attach to only that property granted to *her* as described in that deed and (2) the identical language in the deed granting Betsy's Parcel to Betsy does not grant *Susan* the rights and appurtenances to Betsy's Parcel because Susan is not listed as a grantee in that deed. *See Smith*, 312 S.C. at 468, 441 S.E.2d at 336 (stating that the phrase "all and singular, the rights, members, hereditament[s,] and appurtenances to the said premises belonging, or in anywise incident or appertaining[,]" which followed a deed's property description, showed an intent "to grant all rights essential to the enjoyment of *the premises conveyed*" (alteration omitted) (emphasis added) (quoting *Brasington v. Williams*, 143 S.C. 223, 238–39, 141 S.E. 375, 380 (1927))). To allow Susan to have all of the reserved rights set forth in section 4 as to Betsy's Parcel would render meaningless the language in Betsy's deed granting her all rights essential to the enjoyment of the property conveyed.

In other words, the rights that passed from Father to Susan attach only to Susan's Parcel, not Betsy's Parcel. Susan has no rights in Betsy's Parcel or any improvements such as roads on her property, and the Conservation Easement's language does not convey any new rights to any person who is not the owner of the property over which the Conservation Easement lies. *See Smith*, 312 S.C. at 465, 441 S.E.2d at 335 ("An easement is the right of one person to use the land of another for a specific purpose."). The references to "Grantor" in the Conservation Easement include Father's successors in title only to the extent of the acreage received by each respective successor.[8]

Additionally, the evidence shows that there was more than one access point for the Unified Tract *when Father executed the 1998 Conservation Easement*, i.e., Cainhoy Road and Charity Church Road (through the Access Parcel that he had conveyed to Susan in 1996). *See Ellie, Inc. v. Miccichi*, 358 S.C. 78, 94, 594 S.E.2d 485, 493 (Ct. App. 2004) ("In ascertaining intent, the court will strive to discover the situation of the parties, along with their purposes at the time the contract was entered.").[9] This belies Susan's claim that Father's reserved right to subdivide the

---

[8] The term "Grantor" is defined in the Conservation Easement's first paragraph:

> THIS GRANT DEED OF CONSERVATION EASEMENT (this "Easement") is made as [o]f this __ day of December, 1998, by BENJAMIN FRANKLIN KNOTT, an individual, (*together with his heirs, personal representatives, successors, and assigns hereinafter collectively referred to as "Grantor"*,) and WETLANDS AMERICA TRUST, INC., a non-profit corporation organized under the laws of the District of Columbia, One Waterfowl Way, Memphis, Tennessee 38120, "Grantee" . . . .

(emphasis added).

[9] *See also Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977) ("The purpose of all rules of contract construction is to determine the parties' intention. The courts, in attempting to ascertain this intention, will endeavor to determine the situation of the parties, as well as their purposes, *at the time the contract was entered into*. The court should put itself, as best it can, in the same position occupied by the parties *when they made the contract*. In doing so, the court is able to avail itself of *the same light [that] the parties possessed when the agreement was entered into* so that it may judge the meaning of the words and the

Unified Tract (in section 4.1) would inevitably render one of the two resulting parcels (Susan's Parcel) landlocked—in 1998, Susan already owned the adjacent parcel fronting Charity Church Road. *See Landlocked*, Black's Law Dictionary (11th ed. 2019) (indicating that property is landlocked when it is "[s]urrounded by land, with no way to get in or out except by crossing the land of *another*" (emphasis added)).

The fact that Susan's Parcel became landlocked through her own conveyances *after* Father executed the Conservation Easement is irrelevant to Father's intent when he executed the Conservation Easement in 1998. *Cf. DD Dannar, LLC*, 431 S.C. at 26–27, 846 S.E.2d at 892 (holding that references to a relocation fee as a penalty or a "clawback" were not relevant to the parties' intent at the time they executed a financing agreement because no date was indicated for some of the references and the other references took place years *after* the agreement was executed).

Based on the foregoing, the circuit court erred in interpreting section 4.3 of the Conservation Easement to give Susan an express easement over Betsy's Parcel to access Susan's Parcel. Therefore, we reverse the circuit court's order granting partial summary judgment to Susan. In light of this disposition, we need not address Betsy's issues III and V. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

## CONCLUSION

Accordingly, we reverse the partial summary judgment and remand for further proceedings in this case.

---

correct application of the language." (emphases added) (citation omitted)); *U.S. Bank Tr. Nat'l Ass'n v. Bell*, 385 S.C. 364, 374, 684 S.E.2d 199, 205 (Ct. App. 2009) ("To give effect to the parties' intentions, the court will endeavor to determine the situation of the parties and their purposes at the time the contract was entered."); *cf. DD Dannar, LLC v. SC LAUNCH!, Inc.*, 431 S.C. 9, 26–27, 846 S.E.2d 883, 892 (Ct. App. 2020) (holding that references to a relocation fee as a penalty or a "clawback" were not relevant to the parties' intent at the time they executed a financing agreement because no date was indicated for some of the references and the other references took place years *after* the agreement was executed). In her brief, Susan concedes that evidence pertaining to Father's intent at the time he executed the Conservation Easement is the only relevant evidence.

**REVERSED AND REMANDED.**

**THOMAS and KONDUROS, JJ., concur.**